## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
## OXFORD DIVISION

JERRY LEE LEWIS, JUDITH LEWIS
and JERRY LEE LEWIS, III

       Plaintiff,

VS.

                                                Civil Action No.:
                                                3:17-cv-00180-NBB-RP

EZEKIEL ASA LOFTIN, XII,
PHOEBE LEWIS-LOFTIN, individually and
as successor in interest to
PONT NEUF, INC., a Mississippi Corporation,
PONT NEUF, INC., a Tennessee Corporation,
and, PONT NEUF., an unincorporated legal entity.

       Defendants,

EZEKIEL ASA LOFTIN, XII, PHOEBE
LEWIS-LOFTIN, and, MYRA WILLIAMS,

       Counter-Plaintiffs,

VS.

JUDITH LEWIS, JERRY LEE LEWIS, III,
LORI LEE LEWIS LANCASTER, and,
JOSEPH D. BARTON d/b/a JOE BARTON LAW FIRM,

       Counter-Defendants.

## PLAINTIFFS' FIRST AMENDED COMPLAINT
## FOR DECLARATORY JUDGMENT AND OTHER RELIEF

       Come the Plaintiffs, Jerry Lee Lewis ("Jerry Lee Lewis"), Judith Lewis ("Judith Lewis")

and Jerry Lee Lewis, III ("Lee Lewis") by and through their undersigned counsel, and pursuant

to 28 U.S.C. 2201 and *Federal Rule of Civil Procedure 57,* file this *First Amended Complaint for*

*Declaratory Judgment and Other Relief* against Defendant Ezekiel Asa Loftin, XII ("Defendant Loftin"), Defendant Phoebe Lewis Loftin ("Defendant Lewis-Loftin") individually, and as a successor in interest to Pont Neuf Inc., a Mississippi corporation ("Pont Neuf MS"), Pont Neuf Inc., a Tennessee corporation ("Pont Neuf TN"), and "Pont Neuf," an unincorporated legal entity ("PN"), (collectively hereinafter "Defendant" or "Defendants"), and allege as follows:

## PARTIES

1.     Plaintiff Jerry Lee Lewis is a world-famous singer-songwriter, musician, and entrepreneur who is an adult resident of Southaven, DeSoto County, Mississippi.

2.     Plaintiff Judith Lewis is the wife of Jerry Lee Lewis and assists Jerry Lee Lewis in handling his business affairs. Judith Lewis resides with Jerry Lee Lewis in DeSoto County, Mississippi.

3.     Plaintiff Jerry Lee Lewis, III, is the son of Jerry Lee Lewis, and assists his father in handling his business affairs.  Lee Lewis, resides in DeSoto County, Mississippi.

4.     Upon information and belief, Defendant Loftin is a citizen and resident of the Commonwealth of Virginia and owns real property in Marshall County, Mississippi.

5.     Upon information and belief, Defendant Lewis-Loftin is a citizen and resident of the Commonwealth of Virginia and owns real property in Marshall County, Mississippi.

6.     Upon information and belief, Defendant Lewis-Loftin did business as Jerry Lee Lewis's exclusive manager, in both her own name and through and under the names Pont Neuf, Inc., "Le Pont Neuf," and "Pont Neuf."

7.     Upon information and belief, Defendant Pont Neuf MS was a corporation organized under the laws of Mississippi. It was incorporated in 2000 and administratively dissolved in 2007, and Defendant Lewis-Loftin is the successor in interest to said dissolved corporation.

8.    Upon information and belief, Defendant Pont Neuf TN was a corporation organized under the laws of Tennessee. It was incorporated in 2007 and administratively dissolved in 2012, and Defendant is the successor in interest to said dissolved corporation.

9.    Upon information and belief, Pont Neuf is an unincorporated business entity in existence since at least the date of the Songwriter Agreement (as defined below), owned by Defendant, and on whose behalf, Defendant signed the Songwriter Agreement (as defined below)

## JURISDICTION AND VENUE

10.    This Court has jurisdiction over this controversy, pursuant to 28 U.S.C. § 1332, due to diversity of citizenship. The parties are citizens of different states, complete diversity exists, and the amount in controversy exceeds $75,000.00.

11.    Venue is appropriate in this forum because significant acts giving rise to this controversy, and the property affected thereby, are situated in this judicial district.

## FACTS

12.    Plaintiff Jerry Lee Lewis is a world-renowned musical artist, the recipient of several Grammy Awards and a lifetime achievement award from the National Academy of Recording Arts and Sciences, a member of the Rock & Roll Hall of Fame, the 24th Greatest Artist of All Time in Rolling Stone Magazine, the last surviving member of the Sun Records Million Dollar Quartet and the subject of the American television series "Sun Records" and the touring musical "Million Dollar Quartet." Jerry Lee Lewis is also the father of Defendant Phoebe Lewis-Loftin.

13.    Upon information and belief, Defendant Lewis-Loftin caused Jerry Lee Lewis to execute a certain Management Agreement dated July 3, 2002 ("Management Agreement"), a copy of which is attached hereto as Exhibit A.

14.    The terms of the purported Management Agreement stated:

The Artist [Jerry Lee Lewis] hereby employs the Manager [Phoebe Lewis-Loftin] as his sole and exclusive Manager in all aspects of the entertainment and music industry in which the Artist is involved. Artist agrees not to employ any other third parties to act for him in a like capacity during the term of this Agreement. **Manager accepts such employment and agrees to act solely in Artist's best interests throughout the term hereof.** Exhibit A, ¶ 2 (emphasis added).

15.     Additionally, the Management Agreement stated:

- "Manager will advise, aid, counsel and assist Artist in obtaining and negotiating offers for recording contracts, concert performances and other personal appearances of Artist;" *Id.*, ¶ 4(a).

- "Manager will advise, aid, and counsel and assist Artist with respect to Artist's professional career;" *Id.*, ¶ 4(b).

- "Manager will carry on business correspondence on Artist's behalf relating to all aspects of Artist's professional career;" *Id.*, ¶ 4(e).

- "Manager shall take all steps necessary to enhance and promote Artist's career, and shall fully comply with all applicable laws, rules and regulations of all governmental authorities and secure such licenses as may be required for the rendition of Manager's services to Artist as stated herein;" *Id.*, ¶ 4(g).

- "Manager will continue in her role as personal money manager and confidant in her support role for all personal activities of the Artist." *Id.*, ¶ 4(i).

16.     The term of the Management Agreement was for a period of five (5) years. At the end of the initial five (5) year term, the Management Agreement would automatically renew on a year-to-year basis, "unless within ninety (90) days before the end of the initial five-year term, or each

thereafter, either the Manager or the Artist gives notice to the other party of his or her intent to terminate the Agreement." Id., ¶1.

17.    The purported Management Agreement provides for compensation as follows:

> The Artist [Jerry Lee Lewis] agrees to pay the manager [Phoebe Lewis-Loftin] a sum equal to fifty percent (50%) of all monies or other compensation received by the Artist directly or indirectly in reference to any monies or other consideration received by the Artist in the entertainment industry. The Management fee shall include, but not be limited to record royalties, concert performances, personal appearances, merchandising, marketing of the Artist's name, image, and likeness, and any other aspect of the entertainment industry in which Artist may receive any compensation. The management fee stated herein shall be payable when as such monies or other consideration are received by the Artist, or by anyone else on for the Artist's behalf. The Manager shall be entitled to the aforesaid management commissions after the expiration of the term of this Agreement for so long a period thereafter as the Artist continues to receive monies or other consideration under or upon employment contracts entered into by the Artist during the term of this Agreement including monies or other consideration received by the Artist under the extended term of such employment contract. Exhibit A, ¶ 3.

18.    Upon information and belief, the Management Agreement commenced, and Defendant Lewis-Loftin began managing Jerry Lee Lewis when he was in poor health, in the middle of a stressful divorce, and sixty-five (65) years old. Notwithstanding this adversity, Jerry Lee Lewis generated millions of dollars through the licensing of his intellectual property and a grueling concert schedule for the benefit of Defendants. During this time, Defendant Lewis-Loftin maintained complete control of all of Jerry Lee Lewis's financial assets and financial dealings.

19.    Upon information and belief, while acting in the capacity of Jerry Lee Lewis's exclusive manager under the terms of the Management Agreement, Defendant Lewis-Loftin was responsible for all areas of Jerry Lee Lewis's career, including but not limited to: booking concerts, collecting income and compensation on behalf of Jerry Lee Lewis, maintaining and safeguarding Jerry Lee Lewis's bank and investment accounts, protecting and administering

Jerry Lee Lewis's intellectual property, providing accounts payable services on Jerry Lee Lewis's behalf, preparing short term and long term budgets, and managing his investments. Defendant Loftin also assisted Defendant Lewis-Loftin with Jerry Lee Lewis's business affairs and did business under both Jerry Lee Lewis's name and Pont Neuf.

20.     The Management Agreement created a fiduciary relationship between Jerry Lee Lewis and Defendant Lewis-Loftin obligating said Defendant to act exclusively in Jerry Lee Lewis's best interest and not in her own best interest.

21.     During the time of the Management Agreement, based upon information and belief and statements of Defendant Lewis-Loftin and her agents, Defendant Lewis-Loftin did business with Jerry Lee Lewis at all times as Pont Neuf, Inc. or Pont Neuf. According to the records of the Mississippi Secretary of State, Defendant Lewis-Loftin was Director, President and Incorporator of Pont Neuf, Inc., a Mississippi Corporation that was administratively dissolved on January 17, 2007. Please see attached Exhibit B.  In addition, according to the records of the Tennessee Secretary of State, a Tennessee corporation named Pont Neuf, Inc., was incorporated in March of 2007; in September of 2007 the name of said Tennessee corporation, Pont Neuf, Inc., was changed to Le Pont Neuf, Inc., a Tennessee Corporation; and on August 9, 2012, said corporation was administratively dissolved.  Please see attached Exhibit C.  Based upon information and belief and the statements of Defendant Lewis-Loftin and her agents, Pont Neuf TN never conducted any activity or owned any assets.  Defendants have stated that Pont Neuf MS does not assert ownership of any copyrights, musical compositions, and other intellectual or personal property written, created or owned in whole or in part, by Jerry Lee Lewis and entrusted to Defendants.

22.     Based on information and belief, Defendant Lewis-Loftin caused Jerry Lee Lewis to execute that certain Songwriter Agreement ("Songwriter Agreement"), dated November 1, 2005, a copy of which is attached hereto as Exhibit D, "by and between ***Pont Neuf*** of P.O. Box 675 Nesbit, MS (hereinafter sometimes referred to as 'PN') and Jerry Lee Lewis, 1595 Malone Rd Nesbit, MS, 38651 (hereinafter referred to as 'Composer')." (Emphasis added.)

23.     The purported Songwriter Agreement sold, assigned and delivered **to Defendant Lewis-Loftin,** her successors and assigns through her ownership of PN, all of Jerry Lee Lewis's rights, title, and interest in and to the original musical compositions written, composed or arranged in whole or in part by Jerry Lee Lewis from the period 1950 through 2005, including the right to collect the Composer's share of income, all as more fully stated below (collectively, the "Composer Rights"):

> Composer [Jerry Lee Lewis] hereby **sells, assigns and delivers to PN, its successors and assigns,** all of Composer's rights, title, and interest in and to the original musical compositions written, composed or arranged in whole or in part by Composer from the period 1950 through 2005, including but not limited to the compositions set forth on EXHIBIT A hereto (the "Compositions"), including the title, words and music hereof, all universe-wide rights therein, all copyrights therein and thereto, all registrations with respect thereto, and the exclusive right to secure copyrights and any extensions and renewals of copyrights in the same and in any arrangements and adaptations thereof, all throughout the universe, and any and all other rights, including the right to collect the Composer's share of income (other than the Composer's share of performance income), claims and demands that Composer now has to which Composer might be entitled or that Composer hereafter could or might secure throughout the universe with respect thereto if these presents had not been made, and to have and to hold the same absolutely **and forever unto PN,** its successors and assigns, subject only to any existing agreements between Composer and PN and their respective performing rights society. Exhibit D, ¶ 1 (a) (emphasis added).

24.     Further, the terms of the purported Songwriter Agreement provide for the following unconscionable compensation:

> Fifty percent (50%) of any and all net sums actually received (less any cost for collection) by PN in the United States from the exploitation in the United States and Canada by licensees of PN of mechanical rights, electrical transcription and reproducing rights, motion picture, television productions, advertising commercial and audio vision synchronization rights and all other rights in the Compositions (except print rights which are covered in (a) and (b) above and public performance rights which are covered in (d) below), whether or not such licenses are affiliated with, owned in whole or in part by, or controlled by PN. Exhibit D, ¶ 3(c).

25.     Upon information and belief, the terms of the purported Songwriter Agreement additionally provide for the following power of attorney:

> Composer does hereby irrevocably empower and appoint PN, or any of its officers, Composer's true and lawful attorney (with full power of substitution and delegation in Composer's name, and in Composer's place and stead, or in PN's name, to take and do such action, and to make, sign, execute, acknowledge, deliver, and record any and all instruments or documents which PN from time to time, may deem desirable or necessary **to vest in PN**, its successors, assigns and licensees, any of the rights granted by Composer hereunder, including, without limitation, such instruments or documents required to secure to PN copyright registration and protection for the Compositions for the full term of copyright and for any extensions thereof. Exhibit D, ¶ 7 (emphasis added).

26.     Upon information and belief, the terms of both the Management Agreement and Songwriter Agreement are unconscionable because no fair and honest person would accept its terms, which are unjust, one-sided, and entirely favor Defendant Phoebe Lewis-Loftin.

27.     Upon information and belief, Defendant Lewis-Loftin is in breach of her fiduciary duty to Jerry Lee Lewis under the terms of the Management Agreement by acts including, but not limited, to causing Jerry Lee Lewis to execute the Songwriter Agreement which purports to have him assign virtually all of his Composer Rights to Defendants under the name "Pont Neuf."

28.     Upon information and belief, such an assignment could not be interpreted to be in the best interest of Jerry Lee Lewis, as Defendant Lewis-Loftin's fiduciary obligation and other legal and contractual obligations to Jerry Lee Lewis required.

29.     Upon information and belief, Defendant Lewis-Loftin failed to pay Jerry Lee Lewis the amounts due to him under the terms of the Management Agreement and the Songwriter Agreement (collectively sometimes referred to herein as the "Agreements").

30.     Based on information and belief, irrespective of source, all funds earned by Plaintiff were run through Pont Neuf, Inc. or the Defendants, personally, during the term of the Management Agreement.  Defendant Lewis-Loftin represented to Jerry Lee Lewis that he was an owner of Pont Neuf, Inc. and that all of his funds of any type or kind, including retirement funds, were being safely managed for him.  Jerry Lee Lewis had no reason to be distrustful, and vested complete but unwarranted confidence and trust in Defendant Lewis-Loftin.

31.     Upon information and belief, Defendant Lewis-Loftin, upon inquiry by Jerry Lee Lewis about the state of his finances, repeatedly assured him that she was saving his money for his retirement.

32.     In March of 2012, Jerry Lee Lewis advised Defendant Lewis-Loftin that he was terminating the Management Agreement.  Subsequently, the parties retained separate counsel who began negotiating a final severance and termination agreement to formally terminate the Management Agreement between Jerry Lee Lewis and Defendant Lewis-Loftin. Notwithstanding the settlement negotiations, the parties failed to enter into and execute a formal termination agreement. Since July of 2012, neither Defendant Lewis-Loftin, nor any entity owned or operated by her, has managed the professional affairs of Jerry Lee Lewis to the best of his knowledge, nor has Jerry Lee Lewis received any income or earnings from Defendants or any entity owned or operated by them.

33.     Because of the parties' failure to enter into a severance agreement to formally document and declare that the Management Agreement at issue is no longer legally effective, as late as

2014, the parties have had to enter into a subsequent agreement with HarperCollins Publishing to assign any rights Defendant Lewis-Loftin may have had in a Publishing Agreement with Jerry Lee Lewis.

34.    Upon information and belief, Defendant Lewis-Loftin continues to surreptitiously license and/or maintain rights in Jerry Lee Lewis's Composer Rights and intellectual property; wrongfully retain earnings; and/or directly or indirectly prevent Jerry Lee Lewis from obtaining such earnings held on deposit by certain performing rights organizations that emanate from the Composer Rights and wrongfully withhold royalties and monies derived from such Composer Rights that are due to Jerry Lee Lewis.

35.    Upon information and belief, Defendant Lewis-Loftin continues to receive improper compensation to this day and continues to defraud Jerry Lee Lewis.

36.    Due to the nature of their careers, professional reputational assets are of importance to the livelihood of the Plaintiffs.

37.    Upon information and belief, Defendant Loftin owns or controls a publication known as "Twisted South Magazine."

38.    Upon information and belief, Defendant Loftin is married to Defendant Lewis-Loftin.

39.    Upon information and belief, Defendant Loftin controls and operates a Facebook account under the name Ezekiel Asa Loftin XII. Defendant Loftin also operates additional Twitter, LinkedIn, Etsy, Vimeo, YouTube, Pinterest, Flickr, and other social media and marketing network accounts under various alter-egos and pseudonyms.

40.    Upon information and belief, Defendant Loftin held and continues to hold himself out on social media as the Northern Mississippi-based, "Creative Director/ Son in Law/ Motorcycle

Restoration Coordinator" for Jerry Lee Lewis from February 2010 to the present. Please see the attached <u>Exhibit E</u>.

41.     The above-referenced claims were not and are not factual.

42.     Defendant Loftin solicited business on social media directed to residents of the State of Mississippi through his LinkedIn page. Please see the attached <u>Id.</u>

43.     Upon information and belief, Defendant Loftin, through his Facebook account, regularly engages with and/or targets other social media users who are members of a Jerry Lee Lewis Fan Page or have an interest in Jerry Lee Lewis.  Please see the attached <u>Exhibit F</u>.

44.     Upon information and belief, Defendant Loftin continuously and systematically interacted with Facebook users located in the State of Mississippi.

45.     Defendant Loftin's Facebook page is accessible in DeSoto County, Mississippi, and all over the world.

46.     Upon information and belief, Defendant Loftin uses his marriage to Defendant Lewis-Loftin to garner fame and notoriety as the son-in-law of Plaintiff Jerry Lee Lewis, despite having a contentious relationship with the rest of the Lewis family.

47.     Defendant Loftin laments on his LinkedIn page: "Out of all of my accomplishments in the Mental Health/Mental Retardation field, as an internationally known animal rescuer, or the publisher/creator of an award winning national magazine, etc. I am afraid they are all overshadowed due to simply being the son in law of a, 'Rock & Roll Legend." Please see the attached <u>Exhibit E</u>.

48.     Upon information and belief, Defendant Loftin has a history of publishing defamatory and libelous material concerning other members of the Lewis family, including but not limited to, Jerry Lee Lewis, Judith Lewis, and Jerry Lee Lewis, III.[1] Please see the attached Exhibit G.

49.     In August of 2015, Plaintiffs, through counsel, notified Defendant Loftin in writing that his defamatory Facebook posting was causing injury to Plaintiffs and that continuing to do so could subject him to litigation. Please see the attached Exhibit H.

50.     In August of 2016 Defendant Loftin continued to post untrue and defamatory material concerning the Plaintiffs to his Facebook account. Defendant Loftin also continuously and systematically interacted with, received comment on, and replied to dozens of posts and messages both publicly and presumably privately, with other social media users who had an interest in Jerry Lee Lewis or were members of a Jerry Lee Lewis fan page, some of whom individually commented on the posts in question and were in the State of Mississippi. Please see the attached Exhibit F.

51.     Upon information and belief, Defendant Loftin made more than 35 interactive Facebook posts over a one-year period, containing at least 19 separate instances of defamation. Please see the attached Id.

52.     Upon information and belief, Defendant Loftin, referring to Jerry Lee Lewis and Judith Lewis, posted to his Facebook account: "I am mad at him but I know drugs played a huge part in this. She was his caregiver and then went into elder abuse and someone handing a man drugs should not be pushing them to the alter in a wheel chair after signing documents saying she

---

[1] Zeke Loftin, *Jerry Lee Lewis A) The truth B) Possibly true C) A blatant lie D) None of the above*, Twisted South Magazine, https://www.yumpu.com/en/document/view/12108814/jerry-lee-lewis-twisted-south-magazine (last visited Feb 21, 2017). Please see the attached Exhibit G.

would    not    coerce    him    into    signing    any    signatures    or    contracts…,"
and:

> Now that horrible woman who is claiming to be Jerry Lee Lewis's daughter has been brought into the circle by Judith. You know the child (now grown) whose mother never got her a DNA test because she knew Lori was not his child. Now Judith is telling Jerry and everyone that Lori is his biological child and that is bullshit. Remember Lori Lee, who the judge called a "walking zombie," after she got so doped up she rolled over on her own baby and smothered it to death. Now she is in the house with the rest of that trash feeding Jerry pills and keeping him locked away from reality." She has convinced Jerry that Phoebe took some retirement money from him when Judith pried a safe out of a wall and took Phoebe's jewelry and cash from her bedroom which belonged to Jerry and Phoebe. Exhibit F.

53.    Upon information and belief, Defendant Loftin posted to his Facebook account:

> The only person who knows what happened to that money is Judith who flies through it like a wildfire and now has sold most of Jerry's valuables and vehicles and is down to selling Tupperware and bottle caps touched by the Killer. Elder Abuse! And that bastard child Jerry Lee Lewis III is right there selling it. Exhibit F.

54.    Upon information and belief, Defendant Loftin, referring to Jerry Lee Lewis, posted, "It is obvious at this point the drugs and constant manipulation has taken its toll on the man and he has completely lost any grasp he had on reality." Please see the attached Exhibit F.

55.    Upon information and belief, Defendant Loftin, referring to Jerry Lee Lewis and Judith Lewis, posted to his Facebook account:

> Jerry probably had no idea the sale was even going on. This is the ultimate White Trash sale. After taking all of Phoebe's jewelry stored at the house Judith was told by Jerry Lee, to send back the one ring be bought her for her 16th birthday after Phoebe called her daddy in tears[sic] on the phone and telling him Judith had taken everything she had. The ring had been resized so huge by Judith it looked like a big toe ring and just fell right off Phoebe's hand. Exhibit F.

56.    The posts referenced above are untrue, outrageous, and clearly defamatory.

57.     Upon information and belief, Defendant Loftin's conduct attracted significant comment and interaction with other Facebook users. Many of these interactions were highly inflammatory and had the propensity to incite violence towards Plaintiffs. Please see the attached Exhibit F.

58.     Upon information and belief, one such user, referring to Judith Lewis, alluded to interstate violence when commenting on Defendant Loftin's posts:

>       Zeke, what if he's in another state with her. Can we have her picked up or at least looked at in a different state where somebody has connections? As in Louisiana? You know that I would help you and Phoebe any way I can. Hell, I've even thought about sending her a decoy to pry her ass out of there. Please, tell me how to help and I don't care how down and dirty I have to get to help. All I can tell the mammoth is to bring it!! A stupid as it sounds, the first time I met Phoebe I felt the need to protect her. She reminded me so much of the horrible shit I'm dealing with concerning my own father. I'm enraged and willing! Let's do it! Exhibit H.

59.     Because of Defendant Loftin's posts, Plaintiffs have suffered severe emotional distress.

60.     Additionally, stress created by Defendant Loftin's conduct aggravated existing medical conditions of Plaintiffs.

61.     Upon information and belief, Defendant Loftin made the social media posts in question with actual malice.

## COUNT I
## DECLARATORY JUDGMENT
### (Alleged on behalf of Plaintiff Jerry Lee Lewis against all Defendants)

62.     Since July of 2012, neither Defendant Lewis-Loftin nor any entity owned or operated by her, has managed the professional affairs of Plaintiff with his knowledge.  Plaintiff has not received any income or earnings from Defendant Lewis-Loftin or any entity owned or operated by her since July of 2012.

63.     The Management Agreement is legally null and void due to the actions and inactions of the parties since July of 2012. Therefore, neither the Defendant Lewis-Loftin nor Pont Neuf MS,

or any other legal entity owned or operated by Defendants, has any right to any copyrights, musical compositions, and/or other intellectual or personal property written, created or owned in whole or in part, by Plaintiff directly or indirectly arising from said Management Agreement, or the Songwriter Agreement, the execution of which was foisted upon Plaintiff in breach of Defendant Lewis-Loftin's fiduciary duty to Plaintiff under the terms of the Management Agreement.

64.    Because the Management Agreement has not been formally terminated, and due to the existence of the Songwriter Agreement, the execution of which was foisted upon Plaintiff in breach of Defendant Lewis-Loftin's fiduciary duty to Plaintiff under the Management Agreement, the Plaintiff has been unable to timely receive income he is due from copyrights, musical compositions, and/or other intellectual or personal property written, created or owned in whole or in part, by Plaintiff.

65.    Plaintiff requests that this Court should declare the Management Agreement to be null and void and declare that Defendants Pont Neuf, Inc., and Le Pont Nuef, Inc., have no right to any Composer Rights, copyrights, musical compositions, and/or other intellectual property written, created or owned in whole or in part, by Plaintiff arising from the Management Agreement, due to the existence of the Songwriter Agreement, the execution of which was foisted upon Plaintiff in breach of Defendants' fiduciary duty to Plaintiff under the Management Agreement.

66.    Plaintiff requests, pursuant to 28 U.S.C. 2201 and *Federal Rule of Civil Procedure 57,* that this Court declare that Plaintiff is the rightful owner of his own name and likeness, as related to Plaintiff and his entertainment career and that Plaintiff is the rightful owner of all present and future royalties relating to his entertainment career, and rescind  the July 3, 2002, Management

Agreement, and that any and all agreements between the parties including, but not limited to the aforementioned Songwriter Agreement between the parties, of any kind be held null and void.

## COUNT II
## BREACH OF FIDUCIARY DUTY
**(Alleged on behalf of Plaintiff Jerry Lee Lewis against Defendant Lewis-Loftin)**

67.     Plaintiff incorporates and restates each of the above paragraphs as if fully stated herein.

68.     Pursuant to the terms of the Management Agreement and her management of Plaintiff, Defendant owed Plaintiff the fiduciary duties of loyalty and the utmost good faith and fair dealing in all matters pertaining to Defendant Lewis-Loftin's conduct with respect to Plaintiff's career and personal property. Defendant Lewis-Loftin was also legally obligated to act solely in the best interest of Plaintiff and not in her own self-interest.

69.     Defendant Lewis-Loftin's conduct alleged above, including but not limited to the assignment of Plaintiff's songwriting rights to Defendant Lewis-Loftin, constitutes a breach of her fiduciary duties to Plaintiff.

70.     As a direct and proximate result of Defendant Lewis-Loftin's breaches of her fiduciary duties to Plaintiff, Plaintiff has suffered damages in an amount to be proven at trial.

71.     Defendants acted maliciously, intentionally, willfully, wantonly, fraudulently, and/or recklessly. Punitive damages in an amount according to proof should therefore be awarded against Defendants.

## COUNT III
## BREACH OF CONTRACT
**(Alleged on behalf of Plaintiff Jerry Lee Lewis against Defendant Lewis-Loftin)**

72.     Plaintiff incorporates and restates each of the above paragraphs as if fully stated herein.

73.     From July of 2002 to an indeterminate date, Defendant Lewis-Loftin was required to pay Plaintiff certain sums that related to revenue generated by Plaintiff's entertainment endeavors, pursuant to the Management Agreement and the Songwriter Agreement.

74.     Defendant Lewis-Loftin has failed to fulfill the terms of said Agreements, has breached the Agreements, and owes Plaintiff damages resulting from said breaches of contract.

## COUNT IV
## UNJUST ENRICHMENT
**(Alleged on behalf of Plaintiff Jerry Lee Lewis against all Defendants)**

75.     Plaintiff incorporates and restates each of the above paragraphs as if fully stated herein.

76.     Defendant Lewis-Loftin and Defendant Loftin have received substantial value and benefit from Defendant Lewis-Loftin's misappropriation of funds derived from sources, including but not limited to Plaintiff's touring and intellectual property.

77.     It is unjust and inequitable to allow Defendants to retain the benefit of the funds and assets earned exclusively by the Plaintiff.

78.     Accordingly, Plaintiff demands judgment against Defendants for unjust enrichment in an amount to be determined at trial, together with all accruing interest and costs, including, without limitation, attorneys' fees and all expenses incurred by Plaintiff.

79.     Defendants acted maliciously, intentionally, willfully, wantonly, fraudulently, and/or recklessly. Punitive damages in an amount according to proof should therefore be awarded against Defendants.

## COUNT V
## ACCOUNTING
**(Alleged on behalf of Plaintiff Jerry Lee Lewis against Defendant Lewis-Loftin)**

80.     Plaintiff incorporates and restates each of the above paragraphs as if fully stated herein.

81.     Based on the actions and inactions of Defendant Lewis-Loftin including, without

limitations, the actions identified in this Complaint, the funds and intellectual property entrusted by Plaintiff to Defendant Lewis-Loftin were not used for the purposes for which they were entrusted and have been diverted, misused and squandered by Defendant Lewis-Loftin.

82.     Defendant Lewis-Loftin has continuously failed and refused to provide an accounting account or has provided incomplete and inaccurate accountings to Plaintiff for funds earned through Plaintiff's efforts from touring and intellectual property licensing.

83.     That upon a fair and accurate accounting by Defendant Lewis-Loftin to Plaintiff, substantial sums of money will be found to be due to Plaintiff.

84.     Plaintiff, therefore, seeks and is entitled to a full and complete accounting from Defendant Lewis-Loftin of all the monies that were entrusted by Plaintiff to Defendant Lewis-Loftin, all other assets that were and/or are in the possession, custody and/or control of Defendant Lewis-Loftin and all transactions and monies obtained and/or dispersed from whatever source pursuant or related to the Management Agreement and the Songwriter Agreement.

85.     Plaintiff reserves the right to amend this complaint and *ad danmum* contained herein as additional facts become known.

### COUNT VI
### CONVERSION
**(Alleged on behalf of Plaintiff Jerry Lee Lewis against all Defendants)**

86.     Plaintiff incorporates and restates each of the above paragraphs as if fully stated herein.

87.     Defendant Lewis-Loftin and Defendant Loftin ("Defendants") have purposely and intentionally retained funds and both personal and intellectual property earned by Plaintiff, notwithstanding demands for their return.

88.     Upon information and belief, Defendants have converted these funds and properties for their sole use and benefit. Defendants have in their possession money and property that is the exclusive property of Plaintiff.

89.     As a direct and proximate result of Defendants' actions, Plaintiff has been damaged in an amount to be proven at trial, plus interest thereon.

90.     Defendants acted maliciously, intentionally, willfully, wantonly, fraudulently, and/or recklessly. Punitive damages in an amount according to proof should therefore be awarded against Defendants.

**COUNT VII**
**CONSTRUCTIVE FRAUD**
**(Alleged on behalf of Plaintiff Jerry Lee Lewis against all Defendants)**

91.     Plaintiff incorporates and restates each of the above paragraphs as if fully stated herein.

92.     At all times relevant to this action, there existed between Plaintiff and Defendant Lewis-Loftin, each of them, a fiduciary and/or confidential relationship upon which Plaintiff justifiably relied, to his detriment. Under the terms of the Management Agreement, Defendant Lewis-Loftin owed Plaintiff the fiduciary duties of loyalty and the utmost good faith and fairness in all matters pertaining to Defendant Lewis-Loftin's conduct with respect to Plaintiff's career and personal property. Defendant Lewis-Loftin was also legally obligated to act solely in the best interest of Plaintiff and not in her own best interest.

93.     Plaintiff relied on the special relationship created by the terms of the Management Agreement and Defendant Lewis-Loftin accepted Plaintiff's reliance on such fiduciary and/or confidential relationship.

94.     Defendant Lewis-Loftin breached the aforesaid duty as alleged herein, and in doing so gained an advantage over Plaintiff in matters relating to the management and control of his

19

intellectual property assets. In particular, and without limiting the generality of the foregoing, in breaching said duties as alleged herein, Defendant Lewis-Loftin should be required to disgorge her profits and Plaintiff is entitled to an award in the amount of these profits, and interest on all sums from the date of injury.

95.     Defendant Lewis-Loftin acted maliciously, intentionally, willfully, wantonly, fraudulently, and/or recklessly. Punitive damages in an amount according to proof should therefore be awarded against Defendants.

96.     In providing Plaintiff with career management and related financial advice, Defendant Lewis-Loftin owed Plaintiff a duty to provide him with accurate advice that was in Plaintiff's best interest. Defendant unreasonably and breached this duty.

97.     As a direct and proximate result of Defendant Lewis Loftin's wrongful conduct, Plaintiff has suffered damages as alleged herein.

98.     Defendant Lewis-Loftin acted maliciously, intentionally, willfully, wantonly, fraudulently, and/or recklessly. Punitive damages in an amount according to proof should therefore be awarded against Defendant.

## COUNT VIII
## PROMISSORY FRAUD AND MISREPRESENTATION
### (Alleged on behalf of Plaintiff Jerry Lee Lewis against all Defendants)

99.     Plaintiff incorporates and restates each of the above paragraphs as if fully stated herein.

100.    Defendant Lewis Loftin's intentional representations that Plaintiff would have an ownership interest in Pont Neuf, Inc., was made without regard to its truth or without the present intention to actually give Plaintiff an ownership interest in the company.

101.    Defendant Lewis-Loftin falsely represented to Plaintiff that all intellectual property entrusted to Defendant Lewis-Loftin would revert back to him upon the termination of the

parties' management arrangement. Further, Defendant Lewis-Loftin falsely represented to Plaintiff that entrusting his intellectual property to Defendant Lewis-Loftin was in the best interest of Plaintiff and not, in fact, in the best interest of said Defendant.

102.    Plaintiff reasonably relied on Defendant Lewis-Loftin's representations when he entrusted money and property to said Defendant.

103.    As a result of Defendant Lewis-Loftin's promissory fraud and misrepresentation, Plaintiff is entitled to damages in an amount to be proven at trial.

104.    Defendant Lewis-Loftin acted maliciously, intentionally, willfully, wantonly, fraudulently, and/or recklessly. Punitive damages in an amount according to proof should therefore be awarded against Defendant.

**COUNT IX**
**FRAUD**
**(Alleged on behalf of Plaintiff Jerry Lee Lewis against all Defendants)**

105.    Plaintiff incorporates and restates each of the above paragraphs as if fully stated herein.

106.    Defendant Lewis-Loftin made the above-described false representations that Defendants were saving all of Plaintiff's monies for his retirement and that Plaintiff was an owner and Principal of Pont Neuf, Inc., with knowledge that the representations were false. Defendant Lewis-Loftin concealed material facts from Plaintiff, as described above, with knowledge that the concealed facts were material.

107.    Additionally, Defendant Lewis-Loftin falsely represented to Plaintiff that all personal and intellectual property entrusted to Defendants would revert to him upon the termination of the parties' management arrangement and that such an arrangement was in the best interest of Plaintiff.

108.    Plaintiff relied upon Defendant Lewis-Loftin's misrepresentations and concealment of material facts with justifiable reliance.   Defendant Lewis-Loftin failed to maintain the very companies she created for the Plaintiff's benefit as extant entities.

109.    Defendant Lewis-Loftin wrongfully appropriated, retained and converted Plaintiffs property (including money and intellectual property) in bad faith (and assisted others in doing the same) by committing the intentional acts and omissions described above.

110.    As a direct and proximate result of Defendant Lewis-Loftin's fraud, Plaintiff Jerry Lee Lewis has been damaged in an amount to be proven at trial.

111.    Defendant Lewis-Loftin acted maliciously, intentionally, willfully, wantonly, fraudulently, and/or recklessly. Punitive damages in an amount according to proof should therefore be awarded against Defendants.

## COUNT X
## CONSTRUCTIVE TRUST
### (Alleged on behalf of Plaintiff Jerry Lee Lewis against all Defendants)

112.    Plaintiff incorporates and restates each of the above paragraphs as if fully stated herein.

113.    Defendant Lewis-Loftin obtained money from Plaintiff through a scheme of fraud, concealment, misrepresentation and unfair dealing.

114.    Plaintiff entrusted the money and personal property at issue to Defendant Lewis-Loftin because of the deliberate and intentional scheme of the Defendants to unlawfully deceive Plaintiff and defraud him of his money and property.

115.    It would be unfair, inequitable and unconscionable for Defendants to retain and enjoy the benefits of the monies and property Defendants obtained from Plaintiff.

116.    The imposition of a constructive trust on any property so obtained is necessary and proper to preserve the status quo, and will ensure that Defendants do not otherwise acquire,

22

transfer, encumber, squander, secrete, or dispose of Plaintiff's money and property, or any interests or profits derived from Plaintiff's money or property, without the prior approval of Plaintiff and this Court.

117.    A constructive trust should be imposed over all money and property Defendants' obtained from Plaintiff, as well as overall interest or profits Defendants have obtained from those monies or properties.

118.    That the imposition of a constructive trust is necessary and proper and in the interest of justice and equity and to prevent unjust enrichment.

## COUNT XI
## CIVIL CONSPIRACY
**(Alleged on behalf of Plaintiff Jerry Lee Lewis against all Defendants)**

119.    Plaintiff incorporates and restates each of the above paragraphs as if fully stated herein.

120.    Defendants had the intent and did agree to engage in a civil conspiracy with each other to commit the wrongful acts alleged herein and otherwise misappropriate and convert Plaintiff's property by subjecting it to their own personal use and benefit and exercising dominion over Plaintiff's monies and intellectual property.

121.    Upon information and belief, the conspiracy commenced as early as 2010 and is on-going.

122.    Upon information and belief, each Defendant committed at least one overt act in furtherance of such conspiracy.

123.    Because of Defendants' conspiracy to commit the wrongful acts alleged herein, Plaintiff has been damaged in an amount to be determined at trial.

124.     Defendants acted maliciously, intentionally, willfully, wantonly, fraudulently, and/or recklessly. Punitive damages in an amount according to proof should therefore be awarded against Defendants.

## COUNT XII
## LIBEL PER SE
**(Alleged on behalf of each of Jerry Lee Lewis, Judith Lewis, and Jerry Lee Lewis, III, separately against Defendant Loftin)**

125.     Plaintiffs incorporate and restate each of the above paragraphs as if fully stated herein.

126.     The statements that Defendant Loftin wrote and published concerning Plaintiffs, as detailed above, are false and impute moral turpitude.

127.     The false statements that Defendant Loftin made concerning Plaintiffs were published to various third parties with actual malice

128.     In making these false statements, Defendant Loftin acted with wanton dishonesty and malice such that punitive damages are warranted.

129.     Defendant Loftin knew the statements to be false and acted intentionally in posting the statements to Facebook with actual malice.

130. The statements were published and in fact read by Plaintiff Jerry Lee Lewis' fans, colleagues, clients, and associates.

131. The statements about Plaintiffs were made with intent to injure Plaintiffs' business relationships with actual malice. Additionally, Defendant Loftin's statements regarding elder abuse, crimes of moral turpitude, or any other criminal activity on the part of Judith Lewis, or Jerry Lee Lewis, III, rise to the level of libel *per se.*

132. As a proximate cause of Defendant Loftin's libelous statements, Plaintiffs have suffered special damages to their reputations and to their existing and potential business relationships in an amount to be proven at trial.

133. Plaintiffs are entitled to recover from Defendant Loftin such damages as will compensate them for the damage to their reputations and standing in the community and their profession, their mental anguish and suffering, and their humiliation and embarrassment.

## COUNT XIII
## LIBEL PER QUOD
**(Alleged on behalf of each of Jerry Lee Lewis, Judith Lewis, and Jerry Lee Lewis, III, separately against Defendant Loftin)**

134. Plaintiffs incorporate and restate each of the above paragraphs as if fully stated herein.

135. The statements published by Defendant Loftin were written with the intent to injure the reputations of Plaintiffs, or in reckless disregard of such consequences.

136. By causing the statements at issue to be published to Facebook, the words contained therein were communicated to numerous people including, but not limited to, Plaintiffs family, friends, fans, associates, colleagues, and clients.

137. The people reading the statements at issue, and the Facebook posts in which they are contained, understood these words to be harmful to Plaintiffs' reputations, as well as that of their businesses.

138. Plaintiffs' reputations were injured in that special damages were sustained.

139. The publication of the words contained in the statements, and the Facebook posts in which they are contained, were the sole proximate cause or a proximate contributing cause of Plaintiffs' damages.

## COUNT XIV
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
**(Alleged on behalf of each of Jerry Lee Lewis, Judith Lewis, and Jerry Lee Lewis, III, separately against Defendant Loftin)**

140. Plaintiffs incorporate and restate each of the above paragraphs as if fully stated herein.

141. The words employed by Defendant Loftin in the above referenced Facebook posts were libelous *per* se, extreme, outrageous, and embarrassing.

142. By the act of publishing the above referenced Facebook posts, Defendant Loftin intended to cause Plaintiffs to suffer emotional distress.

143. It was foreseeable that Defendant Loftin's outrageous and unprotected language would cause Plaintiffs to sustain severe emotional injury as they did.

144. The actions of the Defendant Loftin caused Plaintiffs to suffer severe emotional distress and they were injured thereby.

145. Additionally, stress created by Defendant Loftin's conduct aggravated existing medical conditions of Plaintiffs.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs pray that the Court grant them relief as follows:

1. That upon a final hearing in this cause this Court should enter a Declaratory Judgment pursuant to 28 U.S.C. 2201 and *Federal Rule of Civil Procedure 57,* that finds the July 3, 2002, Management Agreement entered into between the Plaintiff Jerry Lee Lewis and Defendant Phoebe Lewis-Loftin be declared legally dissolved and null and void, and no longer legally binding upon either party. Further this Court should also: (a) declare that Defendants Phoebe-Lewis-Lofton, Pont Nuef, Inc., and Le Pont Nuef, Inc., have no right to any copyrights, musical compositions, and/or other intellectual or personal property written, created or owned in whole or in part by Plaintiff Jerry Lee Lewis arising from the termination of the July 3, 2002, Management Agreement, and further declare that any and all agreements between the parties, including but not limited to the aforementioned Management Agreement and the Songwriter Agreement, null and void; (b) declare that Plaintiff Jerry Lee Lewis is the rightful owner of his

own name and likeness and any and all Composer Rights including, but not limited to, all of Jerry Lee Lewis's rights, title, and interest in and to the original musical compositions written, composed or arranged in whole or in part by him from the period 1950 through 2005, and any copyright rights and compositions and any other rights governed by the terms of the Songwriter Agreement and the Management Agreement and that Plaintiff Jerry Lee Lewis is the rightful owner of all present and future royalties emanating from any of his musical compositions at any time including but not limited to the Composer Rights; (c) that the Management Agreement, Songwriter Agreement, and any and all other agreements between the parties be rescinded; and, (d) award Plaintiff such other relief, specific and/or general, to which he may be entitled in the premises.

2.     That upon a final hearing in this cause this Court should find that Defendant Lewis-Loftin breached her fiduciary duties of good faith and fair dealing to Plaintiff Jerry Lee Lewis arising from the July 3, 2002, Management Agreement, and Defendant Lewis-Loftin did breach the contract and unjustly enriched herself to the detriment of Plaintiff Jerry Lee Lewis in an amount to be determined by the trier of fact, and that this Court should award a judgment to Plaintiff Jerry Lee Lewis and order a disgorgement of Defendant Lewis Loftin's profits to be awarded to Plaintiff, together with punitive damages according to proof.

3.     That this Court order Defendant Lewis-Loftin to provide Plaintiff Jerry Lee Lewis a full and complete accounting from Defendants of all the monies and/or assets that were earned by Plaintiff Jerry Lee Lewis and/or entrusted by Plaintiff Jerry Lee Lewis to Defendant Lewis-Loftin and all other assets that were and/or are in the possession, custody and/or control of Defendant Lewis-Loftin that were related to or the result of Plaintiff Jerry Lee Lewis's professional endeavors, including, without limitation, all the monies that were entrusted by

Plaintiff Jerry Lee Lewis to Defendant Lewis-Loftin, all other assets that were and/or are in the possession, custody and/or control of Defendant and all transactions and monies obtained and/or dispersed from whatever source pursuant or related to the Management Agreement and the Songwriter Agreement.

4.      That upon a final hearing in this cause this Court should find that Defendant Lewis-Loftin, unlawfully converted Plaintiff Jerry Lee Lewis's property for her own use, committed fraud to Plaintiff Jerry Lee Lewis and misappropriated the assets of the Plaintiff Jerry Lee Lewis for her own use and illegally conspired with each other to so do, and this Court should award a judgment against Defendant Lewis-Loftin in an amount to be determined according to proof and/or disgorgement of Defendant Lewis-Loftin's profits from said activity, together with punitive damages according to proof.

5.      That this Court impose a constructive trust on all money, assets, and/or property owned by Defendant Lewis-Loftin and hold such in *custodia legis* for the benefit of Plaintiff Jerry Lee Lewis.

6.      That this Court find that Defendant Loftin did commit libel *per se* and libel *per quod* against the Plaintiffs and that he inflicted emotional distress upon the Plaintiffs and this Court should award a judgment against Defendant Loftin in an amount to be determined according to proof and/or together with punitive damages according to proof.

7.      That this Court award Plaintiffs pre-judgment interest, attorneys' fees and costs, and such

other and further relief as this Court deems proper.

RESPECTFULLY SUBMITTED THIS THE 20th day of December, 2017.

JERRY LEE LEWIS, JUDITH LEWIS,
JERRY LEE LEWIS, III PLAINTIFFS

By: /s/ Joseph D. Neyman, Jr.
Joseph D. Neyman, Jr., MS Bar No. 10399
Attorney for Separate Counter-Defendants,
Judith Lewis and Jerry Lee Lewis III
P. O. Box 567
291 Losher Street, Suite B
Hernando, MS 38632
Phone: (662) 298-3106
Fax: (662) 298-3329
Email: jody@neymanlawfirm.com

## CERTIFICATE OF SERVICE

I, the undersigned for the Plaintiff, do hereby certify that on this day I electronically filed

the foregoing **Plaintiffs' First Amended Complaint** with the Clerk of the Court using the ECF

system, which gave notification of such filing to all counsel of record in this matter.

This, the 20th  day of December, 2017.

/s/ Joseph D. Neyman, Jr.
Joseph D. Neyman, Jr. (MSB#10399)

STATE OF _MS._
COUNTY OF _DeSoto_

    This day personally appeared before me, the undersigned authority in and for said county and state, the within named Jerry Lee Lewis, who being by me first duly sworn, states on oath that the matters and things contained in the above and foregoing Amended Complaint are true and correct as therein stated.

_Jerry Lee Lewis_
Jerry Lee Lewis

SWORN to and subscribed before me this the 20th day of December , 2017.

_Ruth a Roman_
Notary Public

My Commission Expires:
_5|11|2018_

STATE OF MISSISSIPPI
NOTARY PUBLIC
ID # 108905
RUTH AURORA ROMAN
Commission Expires
May 11, 2018
DESOTO COUNTY

30

STATE OF ___Ms___
COUNTY OF ___DeSoto___

     This day personally appeared before me, the undersigned authority in and for said county and state, the within named Jerry Lee Lewis, III, who being by me first duly sworn, states on oath that the matters and things contained in the above and foregoing Amended Complaint are true and correct as therein stated.

                                        _____
                                          Jerry Lee Lewis, III

     SWORN to and subscribed before me this the 20th day of December , 2017.

                                          _____
                                          Notary Public

My Commission Expires:
___5|11|2018___

STATE OF MISSISSIPPI
NOTARY PUBLIC
ID # 108905
RUTH AURORA ROMAN
Commission Expires
May 11, 2018
...O COUNTY

STATE OF _MS_
COUNTY OF _DeSoto_

    This day personally appeared before me, the undersigned authority in and for said county and state, the within named Judith Lewis who being by me first duly sworn, states on oath that the matters and things contained in the above and foregoing Amended Complaint are true and correct as therein stated.

_Judith Lewis_
Judith Lewis

    SWORN to and subscribed before me this the 20ᵗʰ day of December, 2017.

_Ruth a Roman_
Notary Public

My Commission Expires:
_5/11/2018_

STATE OF MISSISSIPPI
NOTARY PUBLIC
ID # 108905
RUTH AURORA ROMAN
Commission Expires
May 11, 2018
DESOTO COUNTY