IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

JERRY LEE LEWIS, JUDITH LEWIS,
and JERRY LEE LEWIS, III                                          PLAINTIFFS

V.                                          CIVIL ACTION NO. 3:17-CV-00180-NBB-RP

EZEKIEL ASA LOFTIN, XII,
PHOEBE LEWIS-LOFTIN, and
PONT NEUF, an unincorporated entity                                DEFENDANTS

EZEKIEL ASA LOFTIN, XII, and
PHOEBE LEWIS-LOFTIN                                       COUNTER-PLAINTIFFS

V.

JUDITH LEWIS and
JERRY LEE LEWIS, III                                      COUNTER-DEFENDANTS

<u>MEMORANDUM OPINION</u>

Presently before the court are the parties' motions for summary judgment.  Upon due

consideration of the motions, responses, exhibits and applicable authority, the court is ready to

rule.

<u>Factual and Procedural Background</u>

Plaintiff Jerry Lee Lewis (hereinafter "Jerry") is a world-renowned singer, songwriter and

musician. Sometime in 1999 or 2000, Jerry's daughter, Defendant/Counter-Plaintiff Phoebe

Lewis-Loftin (hereinafter "Phoebe"), moved in with him at his ranch in Nesbit, Mississippi, to

serve both as his caretaker and business manager.  Phoebe admittedly had no relevant work

experience prior to taking on this role.

On July 3, 2002, Jerry and Phoebe executed a "Management Agreement" which

formalized and reaffirmed the father-daughter business relationship.  Pursuant to this agreement,

Phoebe was tasked with managing all aspects of Jerry's entertainment career and was required to

act in his best interest at all times.  Under the agreement's compensation terms, Phoebe was to

receive fifty (50) percent of all entertainment-related income earned by Jerry. A few years later, on February 10, 2005, Jerry appointed Phoebe as his Power of Attorney.

During the management of her father's career, Phoebe hired an intellectual property management team, Brasstacks Alliance, to aid her in generating income from Jerry's written compositions. Phoebe's contact at Brasstacks, Michael Blitzer, drafted a publishing agreement which he encouraged Phoebe to have Jerry sign. Consequently, on November 1, 2005, Jerry signed a "Songwriter Agreement" in which he assigned to Pont Neuf all of his intellectual property rights in all musical compositions written by him from 1950 to 2005.[1] Pursuant to this agreement, Pont Neuf was granted the perpetual right to use and publish these musical compositions and to permit others to use and publish Jerry's name. The agreement obligated Phoebe to provider her father with semi-annual accountings of all royalties due and to pay Jerry a percentage of income generated from said royalties.

Throughout the business relationship, Phoebe deposited all of Jerry's earnings into either her personal or business bank accounts, both of which she alone controlled. Such deposits were not limited to Jerry's entertainment income; rather, Phoebe also deposited his pension and social security checks into these accounts. According to Phoebe, this arrangement was necessary because her father did not have a bank account of his own. Yet, the Power of Attorney gave her authority to open an account for Jerry. Moreover, Phoebe admitted to closing one of Jerry's bank accounts during this time. Jerry often questioned Phoebe as to the whereabouts of his money. While Phoebe admits to never paying her father a salary, Jerry would often pick up cash from venues before a performance. Otherwise, Phoebe handled all of Jerry's finances.

---

[1] Pont Neuf is an unincorporated entity owned solely by Phoebe. Phoebe often acted as Jerry's manager through this entity.

In 2010, Phoebe hired Plaintiff/Counter-Defendant Judith Lewis (hereinafter "Judith") to serve as Jerry's caretaker. Around this same time, Phoebe met Defendant/Counter-Plaintiff Ezekiel Asa Loftin, XII (hereinafter "Zeke"), who owned a magazine entitled "Twisted South." The two met after Zeke contacted Phoebe asking to do a story on Jerry and to put him on the cover of the magazine.[2] Soon after meeting, the two began dating and Phoebe purchased a home in Holly Springs, Mississippi for him to reside.

Sometime in 2011, Jerry and Judith became romantically involved. Soon after, Jerry and Judith visited the office of David Moneypeny, Plaintiff's tax attorney,[3] to review his and Pont Neuf's records. On May 16, 2011, Phoebe's attorney, Blanchard Tual,[4] sent Judith a letter asserting that Judith had breached her employment agreement with Phoebe. Tual further advised Judith that her employment would be terminated, and that she would be removed from the Lewis ranch, should she continue to interfere with Jerry and Phoebe's business relationship.

That same year, Phoebe moved out of her father's ranch, married Zeke and began living at the house in Holly Springs. Jerry and Judith changed the locks at the ranch and the post office box during this time.[5] Despite these circumstances, Phoebe continued to manage her father's career.

Jerry married Judith in Natchez, Mississippi on March 9, 2012. On or about that same date, Jerry advised Phoebe that he no longer wanted her to act as his manager and sent a letter to Blanchard Tual authorizing him to communicate with Sidney Fohrman of Barnes and Thornburg, LLP in California regarding his financial and legal matters. The following day, on March 10,

---

[2] Phoebe invested over $100,000 into the magazine. The magazine failed after only four issues and Phoebe never saw a return on her investment.
[3] Moneypeny had also represented Phoebe and Pont Neuf in the same regard.
[4] Tual represented Jerry, Phoebe and Pont Neuf at this time.
[5] Phoebe received all mail related to her management of Jerry, including royalties, at this address. The parties do not dispute that Phoebe has not had access to any of the documents mailed to this address since March of 2012, at the latest.

2012, Jerry revoked Phoebe's power of attorney. It is undisputed that Phoebe has not taken any actions as her father's manager nor has she received any income under either the Management or Songwriter agreements since that time.

Shortly thereafter, in April of 2012, Moneypeny sent all files related to Jerry's finances to Fohrman. Fohrman subsequently emailed Tual and demanded that one hundred (100) percent ownership of Pont Neuf be transferred from Phoebe to Jerry. Later, in May of 2012, Jerry directed Tual to send Fohrman all files related to his and Pont Neuf's finances. As a result of these inquiries, Phoebe retained Kizer Jones as counsel.

On June 4, 2012, Fohrman advised Jones that he had been retained by Jerry "to investigate all of his current business and financial affairs," and that his investigation had uncovered information that "give rise to a myriad of tortious claims against [Phoebe]." The parties proceeded to exchange settlement offers for two months, but no settlement was reached. Then in December of 2012, Fohrman advised that he no longer represented Jerry.

Following this tumultuous chain of events, tensions amongst the parties appeared to be relaxing. The parties ceased discussing any alleged legal matters or wrongdoing. In fact, Phoebe and Zeke even attended Jerry and Judith's wedding anniversary party in 2013.

However, in August of 2015, Zeke began posting negative statements about Plaintiffs Jerry, Judith and Jerry's son, Plaintiff/Counter-Defendant Jerry Lee Lewis, III (hereinafter "Lee"), on his Facebook profile. Plaintiffs subsequently retained counsel and sent Zeke a letter advising that the posts were defamatory and requesting that they be removed. Zeke obliged.

Nevertheless, Zeke again began posting about Plaintiffs in August of 2016. In these posts, Zeke alleges that Judith overmedicates Jerry to the point that he is unaware of what is going on, and further accuses Judith and Lee of exploiting Jerry and spending all of his money. In general, the posts seemingly accuse Judith and Lee of committing elder abuse.

On August 11, 2017, Plaintiffs filed the instant suit in the Chancery Court of DeSoto County, Mississippi. Defendants promptly removed the action to this court on the basis of diversity jurisdiction. In Plaintiffs' amended complaint, Jerry asserts eleven claims arising out of the father-daughter business relationship. Jerry, Judith and Lee also assert claims for defamation and intentional infliction of emotional distress against Zeke.

In response, Phoebe and Zeke filed a counter-claim in which they assert twelve claims against Judith and Lee for alleged interference with Phoebe and Jerry's business relationship. The parties now move for summary judgment on all claims, arguing that no genuine issues of material fact remain and that they are entitled to judgment as a matter of law.

<u>Standard of Review</u>

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Courts place the burden upon the moving party to show an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the movant makes such a showing, the burden then shifts to the non-movant to "go beyond the pleadings and . . . designate specific facts showing that there is a genuine issue for trial." *Id.* At 324. A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

When deciding a motion for summary judgment, the court must view the underlying facts in the "light most favorable to the party opposing the motion." *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). As such, all reasonable inferences must be drawn in favor of the non-movant. *Id.* Before finding that no genuine issue for trial exists, the court must first be satisfied that no rational trier of fact could find for the non-movant. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "Summary judgment, although a useful device,

5

must be employed cautiously because it is a final adjudication on the merits." *Jackson v. Cain*, 864 F.2d 1235, 1241 (5th Cir. 1989).

Analysis

The parties have filed motions for summary judgment as to all claims asserted herein. Plaintiff and Defendants filed competing motions as to Jerry's financial claims arising from the father-daughter business relationship. Additionally, Judith and Lee move for dismissal of Defendants' counter-claims. Lastly, Zeke moves for partial summary judgment on Plaintiffs' claims for defamation and intentional infliction of emotional distress.

*Jerry's Financial Claims*

In moving for summary judgment, Defendants argue that all of Jerry's financial claims are time-barred. Jerry premises his financial claims primarily on allegations that Phoebe breached various contractual and fiduciary duties owed to him. In general, Jerry asserts that Defendants engaged in wrongful conduct causing him to be deprived of property, i.e. money and intellectual property, of which he is the rightful owner.

The parties agree that all financial claims are subject to either a one-year or three-year statute of limitations and the limitations periods begin to run when the cause of action accrues. *See* Miss. Code Ann. § 15-1-35; Miss. Code Ann. § 15-1-49. Under Mississippi law, unless a claim-specific rule applies, a "cause of action accrues when it comes into existence as an enforceable claim, that is, when the right to sue becomes vested." *Anderson v. LaVere*, 136 So.3d 404, 411 (Miss. 2014) (citing *Bullard v. Guardian Life Ins. Co. of Am.*, 941 So.2d 812, 815 (Miss. 2006)). Put a different way, the statute of limitations "begins to run when all elements of a tort, or cause of action, are present." *Caves v. Yarbrough*, 991 So.2d 142, 147 (Miss. 2008).

Jerry's claims for declaratory judgment, breach of contract, breach of fiduciary duty, unjust enrichment, conversion, fraud,[6] constructive trust and accounting are all governed by a three-year limitations period. *See* Miss. Code Ann. § 15-1-49.[7] For reasons that are to follow, the court finds that these claims are, indeed, time-barred.

In asserting claims for breach of contract, breach of fiduciary duty and declaratory judgment, Jerry alleges that Phoebe breached contractual and fiduciary duties owed under the Management and Songwriter agreements. Claims for breach of contract accrue "at the time of the breach regardless of when damages resulting from the breach occur." *First Trust Nat. Ass'n v. First Nat. Bank of Commerce*, 220 F.3d 331, 334 (5th Cir. 2000) (citing *Young v. Southern Farm Bureau Life Ins. Co.*, 592 So.2d 103, 107 (Miss. 1991)). Phoebe has not performed under either agreement since March 9, 2012, nor has she received any income under those agreements since that time. Based on these undisputed facts, any alleged breach must have occurred on or before the date that the parties' business relationship was terminated.

With respect to his claim for breach of fiduciary duty, Jerry argues that Phoebe breached fiduciary duties created by the Management Agreement when she had him sign and execute the Songwriter Agreement. The court first notes that, according to Jerry's own assertions, the alleged breach occurred in 2005. Further, under Mississippi law, tort claims, including claims breach of fiduciary duty, cannot be based upon contractual obligations but, instead, must be premised on duties arising from some other source. *First Trust Nat. Ass'n*, 220 F.3d at 335 (citing *Palmer v. Orkin Exterminating Co.*, 871 F. Supp. 912 (S.D. Miss. 1994); *Smith v. Orkin*

---

[6] Jerry actually asserts separate claims for constructive fraud, promissory fraud/misrepresentation, and fraud, but Mississippi law does not recognize these as a separate and distinct fraud claims. Accordingly, the court will address such claims as simply a single claim for fraud.

[7] *See also Anderson*, 136 So.3d at 411 (noting that a three-year statute of limitations applies to claims for breach of contract, breach of fiduciary duty, conversion, fraud and unjust enrichment); *Hooker v. Greer*, 81 So.3d 1103 (Miss. 2012) (applying three-year statute to constructive trust claim); *Ellis v. Anderson Tully Co.*, 727 So.2d 716 (Miss. 1998) (applying three-year limitations period to claims for declaratory judgment); *Rice v. Williams*, 387 So.2d 733 (Miss. 1990) (finding that an accounting claim is governed by the three-year limitations period).

*Exterminating Co., Inc.*, 791 F. Supp. 1137 (S.D. Miss. 1990)). Thus, to the extent that his claim is based solely upon the Management Agreement's terms, it must fail.

The court is mindful that Phoebe's Power of Attorney for Jerry would have given rise to certain fiduciary duties. The parties confirm, however, that the Power of Attorney was effectively revoked on March 10, 2012. Consequently, any claim based upon it accrued before or on the date of its revocation, as Phoebe certainly could not have taken any action pursuant to it after that date.

Jerry's remaining claims are all based upon his and Phoebe's business relationship, primarily including allegations that Phoebe committed wrongful conduct which resulted in her wrongfully being in possession of his property. Claims for unjust enrichment accrue when the defendant wrongfully comes into possession of plaintiff's property or money. *See McDonnell v. Miller*, 655 F. App'x 229, 233 (5th Cir. 2016) (citing *Willis v. Rehab Sols., PLLC*, 82 So.3d 583, 599 (Miss. 2012)). Here, Phoebe has not received any money or property related to Jerry's entertainment career, including royalty payments, since March 9, 2012.

Claims for conversion accrue in one of two ways. If the property is outright stolen from the plaintiff, the claim accrues at the time the property was stolen. *Covington County Bank v. Magee*, 177 So.3d 826, 829 (Miss. 2015) (citing *Johnson v. White*, 21 Miss. 584, 588 (1850)). However, when the defendant initially possesses the property lawfully, the cause of action does not accrue until he actually converts the property, that is, when a demand for return is made by the property's rightful owner. *Id.* at 830. In the instant case, Phoebe allegedly stole Jerry's property prior to the termination of their business relationship, on March 9, 2012. Moreover, Jerry made a formal demand for return of his property in a letter sent from his counsel to Phoebe's counsel on June 4, 2012. Accordingly, any claim for conversion accrued, at the latest, on June 4, 2012.

Fraud claims accrue upon consummation of the fraud. *Stephens v. Equitable Life Assur. Society of U.S.*, 850 So.2d 78, 81 (Miss. 2003) (citing *Dunn v. Dent*, 169 Miss. 574 (1934)). Jerry's allegations of fraud all pertain to Phoebe's actions taken as his manager. Consequently, such fraud must have been consummated before or on March 9, 2012, when Phoebe's management of Jerry's career ceased. It is unclear whether the discovery rule would apply to this claim.[8] Even assuming *arguendo* that it does, any such claim would have accrued, at the latest, on June 4, 2012. Again, it is undisputed that Jerry requested and received all financial records for he, Phoebe and Pont Neuf in April of 2012. Jerry's attorney reviewed these records and the information allegedly revealed a "myriad of tortious claims." Following this discovery, on June 4, 2012, Jerry sent Phoebe a settlement offer offering to release any legal claims he may have against her in exchange for transfer of certain property. Thus, Jerry undoubtedly had knowledge of the factual basis of the injury underlying this claim, and all other claims, at this time.

A claim for constructive trust accrues at the time the alleged wrongful act was performed. *See Wholey v. Cal-Maine Foods, Inc.*, 530 So.2d 136, 140 (Miss 1988) (holding that the statute begins to run at "the time when the act was done by which the party became chargeable as trustee by implication"). It is undisputed that Phoebe has performed no acts related to Jerry's entertainment career, nor received any money or property from his career, since he terminated the relationship on March 9, 2012. Accordingly, any such claim accrued on or before that date.

With respect to a claim for an accounting, the statute of limitations begins to run from the date of the dissolution of the business relationship. *Rice v. Williams*, 387 So.2d 733, 735 (Miss. 1980) (citing *Evanovich v. Hutto*, 204 So.2d 477 (Miss. 1967)). Phoebe ceased being Jerry's

---

[8] Mississippi's discovery rule provides that in cases "which involve latent injury . . . the cause of action does not accrue until the plaintiff has discovered, or by reasonable diligence should have discovered, the injury." Miss. Code Ann. § 15-1-49 (2).

manager on March 9, 2012 and has taken no action as his manager since that date. This claim, therefore, accrued at that time.

Jerry additionally asserts a claim for civil conspiracy against Phoebe and Zeke. According to his complaint, Jerry asserts that Defendants began a conspiracy in 2010 to convert and misappropriate his property. Such claims are subject to a one-year statute of limitations. Miss. Code Ann. § 15-1-35; *see also Gasparrini v. Bredemeier*, 802 So.2d 1062, 1066 (Miss. Ct. App. 2001). Jerry terminated Phoebe's management of his career on March 9, 2012, and Defendants have taken no actions nor received any property belonging to him since that time. Thus, this claim accrued on March 9, 2012, at the latest.

The court now briefly addresses Jerry's response in opposition. In general, Jerry argues that Phoebe continues to breach her contractual obligations and fiduciary duties. In other words, Jerry argues that his claims are timely because of an ongoing, or continuing, breach. This argument, however, is without merit as the law does not recognize any "continuing breach" doctrine. Jerry also cites the discovery rule and argues that it saves his claims but fails to substantiate this argument beyond merely regurgitating the rule itself. Moreover, the undisputed facts of this case, which the court has already discussed at length, clearly negate this contention.

In sum, the court finds that all financial claims asserted by Jerry accrued, at the very latest, on June 4, 2012, and, consequently, must have been filed by June 4, 2015. As this action was not filed until August 11, 2017, all claims are time-barred. The court, therefore, finds that Defendants' motion for partial summary judgment as to Jerry's financial claims should be granted.[9]

---

[9] Jerry filed a competing motion for partial summary judgment on his claims for declaratory judgment, breach of contract, breach of fiduciary duty, constructive trust and accounting. After concluding that all financial claims are time-barred and that Defendants' motion should be granted, the court finds it unnecessary to substantively address Jerry's motion.

*Phoebe and Zeke's Counter-Claims*

Plaintiffs Judith and Lee have also moved for summary judgment on Defendants/Counter-Plaintiffs' counter-claims, primarily arguing that all claims are time-barred. In response, Defendants concede that their claims for breach of contract/tortious breach of contract, negligence, gross negligence, civil conspiracy, abuse of process, unjust enrichment/constructive trust, restitution/quantum meruit and accounting are time-barred and, as a result, do not substantively address these claims.

As to their remaining claims for fraudulent concealment, negligent and intentional infliction of emotional distress, tortious interference with business relations and tortious interference with contract, Defendants contend these are timely under the "continuing tort" doctrine. In support, Defendants basically assert that they continue to be harmed by Judith and Lee's alleged wrongful conduct such that the statute of limitations has not yet begun to run.

Under this doctrine, however, when the alleged "tortious acts have ceased, the period of limitations will not be extended on the ground of a continuing wrong." *Smith v. Sneed*, 638 So.2d 1252, 1256 (Miss. 1994) (citing C.J.S., Limitations of Actions § 177 at 230-31). Moreover, "a continuing tort sufficient to toll a statute of limitations is occasioned by continual unlawful acts, not by continual ill effects from an original violation." *Id.* Defendants simply complain of a continuing harm caused by alleged wrongful conduct that undisputedly occurred years ago. Thus, the court finds that application of this doctrine is unwarranted.

A claim for fraudulent concealment is subject to a three-year statute of limitations and accrues at "the time at which such fraud shall be, or with reasonable diligence might have been, first known or discovered." *Stephens*, 850 So.2d at 83 (citing Miss. Code Ann. §15-1-67). In asserting this claim, Defendants allege that Judith and Lee wrongfully changed the locks at Jerry's ranch and the post office box where all business-related mail was sent, and that these

actions interfered with Phoebe's ability to manage her father's career. The actions complained of, however, took place in 2011 and Phoebe admits that she knew about them at that time. Consequently, any claim based upon this alleged conduct accrued at that time.

Claims for intentional infliction of emotional distress and negligent infliction of emotional distress are governed by a one-year and three-year limitations period, respectively. *See Southern v. Mississippi State Hosp.*, 853 So.2d 1212, 1214 (Miss. 2003); *Anderson v. Ladner*, 198 So.3d 381, 387 n.4 (Miss. Ct. App. 2016). In support of these claims, Defendants allege that the severance of Jerry and Phoebe's business relationship has caused them to suffer emotional distress, including depression and anxiety. It is undisputed, however, that the business relationship was severed on March 9, 2012. Thus, Defendants' emotional distress, if any, was caused at this time.

Finally, Defendants' claims for tortious interference with business relations and tortious interference with contract are both subject to a three-year statute of limitations. *See Wertz v. Ingalls Shipbuilding Inc.*, 790 So.2d 841, 845 (Miss. Ct. App. 2001). Defendants concede that Zeke has no viable claim under either of these theories. With respect to Phoebe, she asserts that Judith and Lee committed tortious conduct which caused Jerry to fire her. Yet, according to Phoebe, the alleged tortious conduct underlying these claims began as early as 2011, and likely even before that time. Further, it is undisputed that Phoebe stopped managing her father's career on March 9, 2012. Logic dictates that Judith and Lee could no longer interfere with the business relationship once said relationship was terminated.

For these reasons, the court finds that Defendants' remaining claims accrued, at the latest, on March 9, 2012, when Phoebe and Jerry ended their business relationship, and that, accordingly, such claims are untimely. The court, therefore, finds that Judith and Lee's motion for summary judgment on all of Defendants' counter-claims should be granted.

*Plaintiffs' Claims for Defamation and Intentional Infliction of Emotional Distress*

Lastly, Zeke moves for partial summary judgment on Plaintiffs' claims for defamation and intentional infliction of emotional distress ("IIED"). In support, Zeke argues that Plaintiffs' claims for defamation fail because the statements at issue are not defamatory and, therefore, not actionable. Zeke further opines that Plaintiffs are "public figures" who must prove, and cannot prove, actual malice. Zeke additionally contends that Plaintiffs have failed to demonstrate the requisite elements of an IIED claim.

It is axiomatic that, in considering claims for defamation, "[t]he threshold question is whether the statement made was defamatory." *Fulton v. Mississippi Publishers Corp.*, 498 So.2d 1215, 1216 (Miss. 1986). A defamatory statement is defined as "[a]ny written or printed language which tends to injure one's reputation, and thereby expose him to public hatred, contempt or ridicule, degrade him in society, lessen him in public esteem or lower him in the confidence of the community." *Id.* at 1217. Under Mississippi law, all such statements are actionable per se. *Brewer v. Memphis Pub. Co., Inc.*, 626 F.2d 1238, 1245 (5th Cir. 1980).

Mississippi courts place two restrictions upon claims for defamation. "First, the words used must have been clearly directed toward the plaintiff and, second, the defamation must be clear and unmistakable from the words themselves and not the products of innuendo, speculation or conjecture." *Haguewood v. Gannett River States Pub. Corp.*, 2007 WL 1728700. *5 (S.D. Miss. Jun. 13, 2007) (quoting *Johnson v. Delta Democrat Times Publishing Company*, 531 So.2d 811, 813 (Miss. 1988)).

Plaintiffs' base their claims for defamation upon two posts made Zeke on his Facebook account.[10] On August 20, 2016, Zeke posted as follows:

---

[10] In their complaint, Plaintiffs reference a number of posts in support of their claims for defamation. Plaintiffs, however, have since conceded that only of two of those posts fall within the applicable one-year statute of limitations.

I am mad at him [,] but I know that drugs played a huge part in this. She was his caregiver and then went into elder abuse and someone handing a man drugs should not be pushing them to the alter in a wheel chair after signing documents saying she would not coerce him into signing any signatures or contracts.

The only person who knows what happened to that money is Judith who flies through it like wildfire and now has sold most of Jerry's valuables and vehicles and is down to selling Tupperware and bottle caps touched by the Killer. Elder Abuse! And that bastard child Jerry Lee Lewis III is right there selling it.

Four days later, on August 24, 2016, Zeke again posted about Judith:

I am mad at him [,] but I know drugs played a huge part in this. She was his caregiver and then went into elder abuse and someone handing a man drugs should not be pushing them to the alter in a wheel chair after signing documents saying she would not coerce him into any signatures or contracts, is marriage not a contract? But Mississippi will not respond in any meaningful way nor investigate beyond just showing up asking if he is okay. "You okay?" "Yeah I'm okay." "Well, okay then."

At the outset, the court notes that Jerry admitted in deposition testimony that Zeke's statements have had no impact on his reputation. Moreover, these statements were not clearly directed towards Jerry; rather, the statements targeted Judith and Lee and their alleged actions. It is undeniable that a claim for defamation is "based on an injury to a person's reputation," and such a "claim can only arise if the statements at issue identify or implicate the plaintiff and thereby impact her reputation." *Mize v. Harvey Shapiro Enterprises, Inc.*, 714 F. Supp. 220, 224 (N.D. Miss. 1989). Accordingly, the court finds that Jerry's claim for defamation fails as a matter of law.

With respect to Judith and Lee's claims, the statements clearly accuse both of exploiting Jerry financially. Zeke further asserts that Judith keeps Jerry overmedicated to exert undue influence over him and his decisions. These statements additionally charge the pair of committing elder abuse. Based on the plain language of these posts, the court finds that the posts are clearly directed towards Judith and Lee and are undoubtedly defamatory.

Zeke maintains that his statements are not actionable and are constitutionally protected because they merely represent his subjective opinions. "[W]hether a statement is characterized

as a 'fact' or 'opinion' is no longer a relevant inquiry," but, instead, "the relevant inquiry is whether the statement could be reasonably understood as declaring or implying a provable assertion of fact." *Roussel v. Robbins*, 688 So.2d 714, 723(Miss. 1996) (quoting *Keohane v. Wilkerson*, 859 P.2d 291, 296 (Colo. App. 1993) (citing *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 18-21 (1990)). The court finds it quite clear that Zeke intended for his statements to be understood by readers to be factually accurate. Moreover, as many comments to these posts demonstrate, the readers believed the statements to be true representations of the facts. The court, therefore, finds that Zeke's statements are actionable and not protected expressions of opinion.

Briefly, the court addresses Zeke's contention that Judith and Lee are "public figures" who must prove that he acted with actual malice in posting the defamatory statements. *See Brewer v. Memphis Pub. Co.*, *Inc.,* 626 F.2d 1238 (5th Cir. 1980). "[T]hose who by reason of the notoriety of their achievements or the vigor and success with which they seek the public's attention [] are properly classified as public figures." *Id.* at 1253 (citing *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 342 (1974)).

In arguing that Judith and Lee are public figures, Zeke emphasizes their relation to Jerry, who is undisputedly a public figure, as well as their public appearances alongside him. Zeke additionally notes that Judith was a member of a travelling all-women's basketball team decades ago and that the team was recently inducted into the Naismith Basketball Hall of Fame. Zeke further points out that Lee performed a small role in a single episode of a County Music Television series based upon Jerry's label Sun Records. While these accomplishments are certainly respectable, the court is unpersuaded that they rise to the requisite level of notoriety necessary to render Judith and Lee public figures.

Plaintiffs failed to address their claims for intentional infliction of emotional distress ("IIED") in response to Zeke's motion for summary judgment. "A plaintiff abandons a claim when she does not respond to a dispositive motion's arguments attacking it." *Parga v. ADT Security Services*, 2016 WL 8919154 (W.D. Tex. Mar. 22, 2016) (citing *Black v. North Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006)); *see also White Buffalo Ventures, LLC v. Univ. of Texas*, 2004 WL 1854168, at *2 n.3 (W.D. Tex. Mar. 22, 2014); *McVille v. Inter-Community Healthcare, Inc.*, 2011 WL 288962, at *2 n.2 (E.D. La. Jan. 25, 2011).

Even so, the court finds that Plaintiffs' claims for IIED fail as a matter of law. Mississippi law imposes a heavy burden upon those seeking relief for IIED as liability exists "only where the defendant's conduct has been extreme and outrageous." *Wong v. Stripling*, 700 SO.2d 296, 306 (Miss. 1997). Instead, "[l]iability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.*

Plaintiffs' claims for IIED are based entirely upon Zeke's Facebook posts. While those posts obviously depicted Plaintiffs in a negative light, the court is unpersuaded that Zeke's actions in posting them constitute "extreme and outrageous" conduct. Further, Plaintiffs have failed to demonstrate that these statements caused them *severe* emotional distress. *See Burroughs v. FFP Operating Partners, L.P.*, 70 F.3d 31, 33 (5th Cir. 1995) (noting that Mississippi courts require a showing of "severe" emotional distress). At most, Plaintiffs complain of depression, stress and anxiety. These alleged injuries, though unfortunate, do not entitle Plaintiffs to relief under this theory of liability.

In sum, the court finds that Zeke's motion for partial summary judgment should be granted as to Jerry's claim for defamation and Plaintiffs' claims for IIED. Judith and Lee's claims for defamation, however, should proceed forward.

<u>Conclusion</u>

Based on the foregoing discussion, the court finds that Defendants' motion for partial summary judgment on Plaintiff 's financial claims should be granted and that, as a result, Plaintiff's motion for partial summary judgment should be denied. The court further finds that Plaintiffs' motion for summary judgment on Defendants' counter-claims should be granted. Lastly, the court finds that Defendants' motion for partial summary judgment as to Plaintiffs' claims for defamation and intentional infliction of emotional distress should be granted in part and denied in part. A separate order in accord with this opinion shall issue this day.

This, the 25th day of April, 2019.

/s/ Neal Biggers
**NEAL B. BIGGERS, JR.**
**UNITED STATES DISTRICT JUDGE**